IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | |
|---|---|
| BETTY JEAN WILLIAMS, ) | CIVIL ACTION NO.: 4:10-cv-2966-TER |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | ORDER |
| MICHAEL J. ASTRUE, ) | |
| COMMISSIONER OF SOCIAL ) | |
| SECURITY, ) | |
| ) | |
| Defendant. ) | |
| ) | |

This is an action brought pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. Section 405(g), to obtain judicial review of a "final decision" of the Commissioner of Social Security, denying Plaintiff's claim for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI). The only issues before the Court are whether the findings of fact are supported by substantial evidence and whether proper legal standards have been applied. This case was referred to the undersigned for a report and recommendation pursuant to Local Rule 73.02(B)(2)(a), (D.S.C.).

## I.  PROCEDURAL HISTORY

Betty Jean Williams ("Plaintiff" or "Claimant") filed applications for DIB and SSI on May 5, 2008, alleging inability to work since March 1, 2008, due to seizures, back pain, and stroke. Plaintiff subsequently amended her onset date to March 30, 2008. (Tr. 8, 234). Her applications were denied at all administrative levels, and upon reconsideration. Plaintiff filed a request for a hearing.

A hearing was held on March 4, 2010, before an Administrative Law Judge ("ALJ") at which the Plaintiff appeared and testified. The ALJ issued an unfavorable decision on April 16, 2010. (Tr. 14-23). The Appeals Council denied Plaintiff's request for review (Tr. 1-5), thereby making the ALJ's decision the Commissioner's final decision. Plaintiff sought judicial review in this court by the filing of a complaint on November 15, 2010.

## II. FACTUAL BACKGROUND

The Plaintiff was born on December 2, 1961, and was 48 years old at the time of her hearing before the ALJ. (Tr. 30). She has a twelfth grade education and past work experience as a housekeeper. (Tr. 32).

## III. DISABILITY BACKGROUND

The Plaintiff's arguments consist of the following, quoted verbatim:

(1) The ALJ failed to evaluate the combined impact of Ms. Williams' multiple impairments;

(2) The ALJ conducted a flawed RFC analysis; and

(3) The ALJ improperly relied on the Medical-Vocational Guidelines (Grids).

(Plaintiff's brief).

In the decision of April 16, 2010, the ALJ found the following:

1. The claimant meets the insured status requirements of the Social Security Act on December 31, 2012.

2. The claimant has not engaged in substantial activity since March 30, 2008, the amended alleged onset date. (20 CFR 404.1571 *et. seq.*, and 416.971 *et. seq* ).

> 3. The claimant has the following severe impairments: status-post stroke, back pain, and seizure disorder (20 CFR §§ 404.1520(c) and 416.920(c)).
>
> 4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).
>
> 5. After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c) and 416.967(c) with some additional limitations. Specifically, claimant is able to lift and carry up to 50 pounds occasionally and 25 pounds frequently; to stand and/or walk for 6 hours in an 8-hour day with intermittent sitting; to push and pull arm and leg controls; and to frequently bend and/or stoop. However, claimant is restricted from working at heights and must avoid moving machinery.
>
> 6. The claimant is capable of performing past relevant work as a housekeeper. This work does not require the performance of work related activities precluded by the claimant's residual functional capacity. (20 CFR 404.1565 and 416.965).
>
> 7. The claimant has not been under a disability, as defined in the Social Security Act, from March 30, 2008, through the date of this decision. (20 CFR 404.1520(f) and 416.920(f)).

(Tr. 10-20).

The Commissioner argues that the ALJ's decision was based on substantial evidence and that the phrase "substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 390-401, (1971). Under the Social Security Act, 42 U.S.C. § 405 (g), the scope of review of the Commissioner's final decision is limited to: (1) whether the decision of the Commissioner is supported by substantial evidence and (2) whether the legal conclusions of the Commissioner are correct under controlling

law. Myers v. Califano, 611 F.2d 980, 982-83 (4th Cir. 1988); Richardson v. Califano, 574 F.2d 802 (4th Cir. 1978). "Substantial evidence" is that evidence which a "reasonable mind might accept as adequate to support a conclusion." Richardson, 402 U.S. at 390. Such evidence is generally equated with the amount of evidence necessary to avoid a directed verdict. Shively v. Heckler, 739 F.2d 987, 989 (4th Cir. 1984). The Court's scope of review is specific and narrow. It does not conduct a de novo review of the evidence, and the Commissioner's finding of non-disability is to be upheld, even if the Court disagrees, so long as it is supported by substantial evidence. 42 U.S.C. § 405 (g) (1982); Blalock v. Richardson, 483 F.2d 773, 775 (4th Cir. 1972).

The general procedure of a Social Security disability inquiry is well established. Five questions are to be asked sequentially during the course of a disability determination. 20 C.F.R. §§ 404.1520, 1520a (1988). An ALJ must consider (1) whether the claimant is engaged in substantial gainful activity, (2) whether the claimant has a severe impairment, (3) whether the claimant has an impairment which equals a condition contained within the Social Security Administration's official listing of impairments (at 20 C.F.R. Pt. 404, Subpart P, App. 1), (4) whether the claimant has an impairment which prevents past relevant work and (5) whether the claimant's impairments prevent him from any substantial gainful employment.

Under 42 U.S.C. §§ 423 (d)(1)(A) and 423(d)(5) pursuant to the Regulations formulated by the Commissioner, the plaintiff has the burden of proving disability, which is defined as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." See 20 C.F.R. § 404.1505(a); Blalock, 483 F.2d at 775.

If an individual is found not disabled at any step, further inquiry is unnecessary. 20 C.F.R. § 404.1503(a). Hall v. Harris, 658 F.2d 260 (4th Cir. 1981). An ALJ's factual determinations must be upheld if supported by substantial evidence and proper legal standards were applied. Smith v. Schweiker, 795 F.2d 343, 345 (4th Cir. 1986).

A claimant is not disabled within the meaning of the Act if she can return to her past relevant work as it is customarily performed in the economy or as the claimant actually performed the work. SSR 82-62. The claimant bears the burden of establishing her inability to work within the meaning of the Social Security Act. 42 U.S.C. § 423 (d)(5). She must make a prima facie showing of disability by showing she was unable to return to her past relevant work. Grant v. Schweiker, 699 F. 2d 189, 191 (4th Cir. 1983).

Once an individual has established an inability to return to her past relevant work, the burden is on the Commissioner to come forward with evidence that the plaintiff can perform alternative work and that such work exists in the regional economy. The Commissioner may carry the burden of demonstrating the existence of jobs available in the national economy that the plaintiff can perform despite the existence of impairments which prevent the return to past relevant work by obtaining testimony from a vocational expert. Id. at 191.

### IV.  ARGUMENTS AND ANALYSIS

**Combination of impairments**

Plaintiff argues "[t]he ALJ failed to evaluate the combined effect of Ms. Williams' multiple impairments." (Plaintiff's brief, p. 6). Plaintiff asserts that "the ALJ's failure to evaluate the combined effect of her various severe and non-severe impairments and make particularized findings

in that regard preclude a finding that the decision rests on substantial evidence. The ALJ proceeded through the requisite listing analysis for each impairments but made no attempt to evaluate the combined effect of Ms. Williams' multiple impairments at this or any subsequent stage of the disability determination process." (Plaintiff's brief, p. 6-7). Therefore, Plaintiff asserts the ALJ failed to comply with the mandate of Walker v. Bowen, 889 F.2d 47 (4th Cir. 1989).

Defendant argues the ALJ reasonably considered Plaintiff's impairments individually and in combination. Defendant contends that, unlike the ALJ in Walker, the ALJ in this case assessed a detailed RFC based on a detailed analysis of her various impairments "which shows that he accounted for Plaintiff's combination of impairments to the extent he found them supported by the record as a whole." (Def.'s brief, p. 11).

As set out above, the ALJ found that Plaintiff had the following severe impairments: status-post stroke, back pain, and seizure disorder, but that she did not have an impairment or a combination of impairments listed in or medically equal to one listed in Appendix 1, Subpart. P, Regulation No. 4. (Tr.11-13). The ALJ also found that the record documents the Plaintiff was treated for patent foramen ovale, hypertension, or hypercholestermia, which he did not assess to be severe impairments "as they are only slight abnormalities and have no more than a minimal effect on the claimant's ability to work." (Tr. 11).

The role of the federal judiciary in reviewing decisions made under the Social Security Act is limited. See 42 U.S.C. § 405(g). The court must uphold the Commissioner's decision as long as it is supported by substantial evidence. Blalock, 483 F.2d at 775. In order for a reviewing court to determine whether the Commissioner based a decision on substantial evidence, "the decision must include the reasons for the determination . . . " Green v. Chater, 1995 U.S.App. LEXIS 21970, *7,

1995 WL 478032 (4th Cir.1995) (*citing* Cook v. Heckler, 783 F.2d 1168, 1172 (4th Cir.1986)). When dealing with a claimant with more than one impairment, the Commissioner "must consider the combined effect of a claimant's impairments and not fragmentize them." Walker v. Bowen, 889 F.2d 47, 50 (4th Cir.1989) (citations omitted). This requires the ALJ to "adequately explain his or her evaluation of the combined effects of the impairments." Walker, 889 F.2d at 50 (citing Reichenbach v. Heckler, 808 F.2d 309, 312 (4th Cir.1985)).

In Walker, the Fourth Circuit remanded plaintiff's claim because the ALJ failed to adequately consider and explain his evaluation of the combined effects of the claimant's impairments. See Walker, 889 F.2d at 49-50. The ALJ found that the claimant suffered from several ailments and noted the effect or non-effect of each impairment separately. See id. The ALJ found that "the claimant did not have an impairment or combination of impairments listed in, or medically equal to, one listed in Appendix 1, Subpart P, Reg. No. 4." Walker, 889 F.2d at 49. The Fourth Circuit held that the ALJ failed to adequately consider and explain his finding because he did not analyze or explain his evaluation of the cumulative effect of the claimant's impairments. See id. at 49-50.

In this case, the ALJ found at Step Three of the sequential evaluation that Plaintiff "did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, and 404.1526, 416.920(d), 416.925 and 416.926)." (Tr. 11). Unlike the ALJ in Walker and its progeny, the ALJ in this action discussed each of Plaintiff's impairments and performed a detailed RFC analysis that demonstrates the ALJ considered Plaintiff's impairments in combination. In the decision, the ALJ stated the following, quoted verbatim, in part:

> Claimant does not have a condition which meets or medically equal[s] the criteria of Listing 12.02 for organic mental disorder. Although claimant's medical records

7

reveal she had a stroke in March 2008, her records fail to demonstrate a loss of specific cognitive abilities or affective changes. In August 2008, consultative examiner Malcolm Horry, M.D., stated that the claimant seemed to have some cognitive deficits but that such deficits may have preceded her stroke. He additionally reported that he did not think her deficits prohibited her from working. (Exhibit 16F). Claimant's cardiologist consistently reported her to be alert and oriented to time, place, and person with appropriate affect. (Exhibits 9F, 11F, 22F, and 28F).

In making this finding, I have also considered whether the "paragraph B" criteria are satisfied . . .

In activities of daily living, the claimant has no restriction. Claimant is able to perform her own grooming, wash dishes, shop for groceries, count money, and pay bills.

In social functioning, the claimant has no difficulties. She watches television with her younger daughter, visits her aunt 2 times per week, and talks to her aunt on the phone .

With regard to concentration, persistence or pace, the claimant has mild difficulties. Claimant alleged experiencing confusion and having concentration problems. Her medical records, however, do not document that she experienced significant confusion or concentration problems. Claimant reported she is disoriented for approximately 30 minutes following a seizure. She testified she sometimes forgets to take her seizure medication at night. But she also testified she only has problems concentrating while watching television if she has been watching it for a while. She testified she is able to read a newspaper and she reported she is able to count money and pay bills.

As for episodes of decompensation, the claimant has experienced no episodes of decompensation, which have been of extended duration.

Because the claimant's mental impairment does not cause at least two "marked" limitations or one"marked limitations" and "repeated episodes of decompensation, each of extended duration, the "paragraph B" criteria are not satisfied.

I have also considered whether the "paragraph C" criteria are satisfied. In this case, the evidence fails to establish the presence of the "paragraph C" criteria. The medical evidence fails to indicate that the claimant suffers from any residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the claimant to decompensate; . . .

> The limitations identified in the "paragraph B" criteria are not a residual functional capacity assessment but are used to create the severity of mental impairments at steps 2 and 3 of the sequential evaluation process. The mental residual functional capacity assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment by itemizing various functions contained in the broad categories found in paragraph B of the adult mental disorders listing in 12.00 of the Listing of Impairments. (SSR 96-8p). Therefore, the following residual functional capacity assessment reflects the degree of limitation I have found in the "paragraph B" mental function analysis.
>
> I have also considered Listing 11.04 in evaluating any lasting effects of claimant's stroke. However, the evidence of record fails to reveal sensory or motor aphasia resulting in ineffective speech or communication, or significant and persistent disorganization of motor function in two extremities resulting in sustained disturbance of gross and dexterous movements or gait and station.
>
> I have considered Listing 1.04 in evaluationing claimant's back pain. However, claimant's medical records fail to reveal evidence of nerve root compression characterized by neuro-anatomic pain, limitations of motion of the spine, motor loss accompanied by sensory or reflex loss, and positive straight leg raises. . . . Lastly, claimant's treatment notes do not show lumbar spinal stenosis resulting in pseudoclaudication and an inability to ambulate effectively. Claimant testified she is able to walk a half mile to a mile.
>
> I have considered whether the claimant's seizures meet Listing 11.02 for convulsive epilepsy. However, Dr. Horry reported that claimant has non-convulsive epilepsy and claimant's medical records do not contain any contrary diagnosis. (Exhibit 16F).
>
> I have also considered listing 11.03 for non-convulsive epilepsy. However, the record as a whole does not support a finding that claimant has non-convulsive epilepsy documented by detailed description of a typical seizure pattern . . . additionally, her medical records fail to reveal significant interference with activity during the day...

(Tr. 12-13).

Additionally, the ALJ's decision accounted for Plaintiff's combination of impairments in determining that Plaintiff had the RFC to perform medium work with the following restrictions: claimant is able to lift and carry up to 50 pounds occasionally and 25 pounds frequently; to stand and or walk for 6 hours in an 8-hour day with intermittent sitting; to push and pull arm and leg controls;

and to frequently bend and/or stoop. However, claimant is restricted from working at heights and must avoid moving machinery. The ALJ stated that in determining the RFC, he had carefully considered the "entire record." (Tr. 13).

The court finds the ALJ's discussion and analysis to be sufficient to demonstrate that he considered Plaintiff's impairments in combination. The decision includes sufficient findings regarding the combination of her impairments for the court to properly review the ALJ's conclusion on this issue. See Thornsberry v. Astrue, C/A No. 4:08–4075–HMH–TER, 2010 WL 146483, *5 (D.S.C. Jan.12, 2010) (unpublished) ( "Accordingly, the court finds that while the ALJ could have been more explicit in stating that his discussion dealt with the combination of Thornsberry's impairments, his overall findings adequately evaluate the combined effect of Thornsberry's impairments. Any error on the part of the ALJ in failing to use explicit language is harmless."). Though a more thorough analysis may be required in some cases, Plaintiff fails to demonstrate how any additional discussion could have produced a different result. Plaintiff does not point to any medical evidence which could demonstrate that the ALJ's analysis was not supported by substantial evidence. Thus, it appears that the ALJ did not err, and if he did, the error was harmless. See Robinson v. Astrue, 2011 WL 4368396 (D.S.C. Sept. 19, 2011).

**Past Relevant Work**

Plaintiff contends that the ALJ conducted a flawed RFC analysis by concluding that she could return to her past relevant work without explanation and failing to make the requisite function-by-function analysis. Plaintiff argues the ALJ gave no support to the assertion that she could return to her past relevant work in that he elicited no hearing testimony on the subject and gave no rationale

in the written opinion. Plaintiff asserts that "[n]o description of the work was given as generally done or as done by Ms. Williams for the past 15 years. It is thus impossible for a reviewing court to determine whether the conclusion that Ms. Williams can return to her past relevant work is supported by substantial evidence." (Plaintiff's brief, p. 7).

Defendant asserts the ALJ did not fail to meet his burden to provide a specific assessment of her functional abilities. Defendant contends the ALJ complied with SSR 96-8p by completing Steps Two and Three of the sequential evaluation and then provided a "more detailed assessment." Defendant asserts the ALJ did not find Plaintiff's testimony credible.[1] After summarizing the evidence in the case, Defendant argues the ALJ correctly provided a detailed summary paragraph listing the specific restrictions in the workplace due to Plaintiff impairments. Thus, Defendant argues the RFC assessment complied with the requirements of SSR 96-8 and provided a function-by-function assessment of Plaintiff's ability to work.

The ALJ found Plaintiff could perform medium work[2] stating the following:

> After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c) and 416.967(c) with some additional limitations. Specifically, claimant is able to lift and carry up to 50 pounds occasionally and 25 pounds frequently; to stand and/or walk for 6 hours in an 8-hour day with intermittent sitting; to push and pull arm and leg controls; and to frequently bend and/or stoop. However, claimant is restricted from working at heights and must avoid moving machinery.

---

[1] Defendant asserts Plaintiff did not raise an issue with regard to credibility in her brief.

[2] Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds." 20 C.F.R. §§ 404.1567(c), 416.967(c).

(Tr. 13).

Under SSR 96–8p, "[t]he RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and non-medical evidence (e.g., daily activities, observations)." The ALJ's decision shows that he complied with this SSR. The ALJ's decision includes a thorough review and consideration of the evidence and the effects of all the Plaintiff's impairments in deciding her RFC. The ALJ thoroughly discussed the medical records and findings of Plaintiff's physicians and objective testing, as well as, Plaintiff's own testimony, noting the physical and mental findings as reflected in the medical evidence, the effectiveness of Plaintiff's treatments, and included references to the medical evidence upon which his findings were based. The ALJ outlined the medical evidence with respect to Plaintiff's physical limitations, noting where the objective medical evidence did not support the degree of limitation claimed. The ALJ discussed in detail Plaintiff's alleged seizure disorder, back and leg pain, patent foramen ovale, hypertension, hypercholesteremia, and stroke. The ALJ noted that Plaintiff's medical providers did not document any objective findings that her stroke caused her to have problems with concentration or confusion. The ALJ noted that Plaintiff underwent a consultative examination with Dr. Horry in August 2008, who reported that "claimant understood everyday activities, consequences, her own needs, and social situations." He further reported her recent memory to be intact. Dr. Horry concluded that "claimant seemed to have some cognitive deficits but that they may have preceded the stroke. He further stated that claimant's cognitive deficits did not seem to prohibit her from working." (Tr. 15). Additionally, the ALJ noted that the treatment notes from Plaintiff's treating cardiologist, Dr. MacCabe, revealed that in September 2009, Plaintiff had no additional neurological events following her March 2008 stroke. Plaintiff did not

have any "significant treatment relating to her stroke, patent foramen ovale, hypertension, or hypercholesteremia" and that no physician placed any limitations upon her relating to these conditions. The ALJ also found that the treatment notes do not reveal that her medical providers placed any significant long-term limitations upon her due to her back and leg pain. The ALJ noted that Plaintiff testified she could walk the distance of a half mile to a mile, and could walk for twenty minutes. With regard to her seizures, the ALJ found that "Dr. Horry noted that any cognitive deficits would not prohibit her from working" and that her "own medical providers have not included anything in her records which would indicate that her seizures significantly impair her thought processes, concentration, or memory." (Tr. 17). The ALJ further found that both Ms. Curtis, nurse practitioner, and Dr. MacCabe submitted statements indicating Plaintiff would be capable of handling her monthly benefit in her own interest. However, the ALJ stated, "[n]evertheless, due to her seizures, I have restricted claimant from working at heights or around moving machinery." (Tr. 17). The ALJ noted the following:

> I have also considered opinion evidence in accordance with the requirements of 20 CFR 404.1527 and 416.927 and SSRs 96-2p, 96-5p, 96-6p and 06-3p. In January 2008, state agency medical consultant, Jim Liao, M.D., provided an opinion that claimant did not have any exertional limitations. I accord little weight to Dr. Liao's opinion as the evidence of record reflects that claimant's back pain and being status-post stroke would limit her to work at the medium exertional level. As discussed above, x-rays and an MRI show degenerative changes in claimant's lumbar spine. While her medical providers have not imposed any long-term limitations upon claimant relating to her back, the evidence generally supports a conclusion that claimant should be limited to medium work. Additionally, although claimant's medical providers have not placed any specific limitations upon, given her history of having had a stroke in March 2008, it is reasonable to limit her to medium work.
>
> In October 2008, Dr. Liao provided another opinion limiting claimant to medium work with some additional limitations. Specifically, Dr. Liao stated that claimant could occasionally lift 50 pounds, frequently lift 25 pounds, stand and/or walk with normal breaks for a total of about 6 hours in an 8-hour work day; sit with normal breaks for a total of about 6 hours in an 8-hour work day; and could perform

unlimited pushing and/or pulling including the operation of hand and/or foot controls. However, he opined that claimant should never climb ladders, ropes, or scaffolds; should avoid concentrated exposure to cold, heat, and humidity; and should avoid all exposure to hazards. Dr. Liao's opinion is generally consistent with the evidence of record except that limitations regarding exposure to cold, heat, and humidity are not supported by claimant's medical records. Claimant's medical records do support that claimant should be restricted from exposure to hazards due to her seizures. While I have not specifically restricted claimant from climbing ropes, ladders, and scaffolds, I find that Dr. Liao's restriction from these activities would be adequately accounted for by the restriction from hazards including heights. . .

Consultative evaluator, Dr. Horry, opined in August 2008 that claimant's non-convulsive seizure disorder would prevent her from driving duties or hazardous duties. I find Dr. Horry's opinion to be generally consistent with the evidence of record and accord it great weight. Dr. Horry also stated that claimant's history of back pain would suggest that heav[y] lifting and prolonged walking or standing duties would not be acceptable. I accord limited weight to this opinion. While claimant's medical records do support a conclusion that claimant should be limited to medium work and restricted from work at a heavy exertional level, her records do not support a conclusion that she would not be able to walk or stand for prolonged periods of time. Claimant herself testified that she is able to walk for a half mile to a mile at time.

(Tr. 18).

This Court finds that the ALJ did not err in giving different weight to the different medical sources in making his conclusion. Accordingly, the ALJ's finding regarding Plaintiff's RFC is consistent with 10 C.F.R. §§ 404.1567(b) and 416.967(b), and includes limitations based specifically on Plaintiffs ability to lift, carry, stand and walk. The ALJ also added additional restrictions to the RFC.

In sum, the decision reflects that the ALJ properly reviewed all of the evidence in determining Plaintiff's RFC. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990) [It is the responsibility of the ALJ to weigh the evidence and resolve conflicts in that evidence]; see also Clarke v. Bowen, 843 F.2d 271, 272–273 (8th Cir.1988) ["The substantial evidence standard presupposes . . . a zone of choice within which the decision makers can go either way without

interference by the Courts"]. The ALJ's finding that Plaintiff could perform medium work with restrictions as noted is supported by substantial evidence in the case record. See English v. Shalala, 10 F.3d 1080, 1084 (4th Cir.1993) [finding that substantial evidence supported the ALJ's conclusion that the claimant was physically capable of limited light work despite his multiple impairments; case remanded on other grounds]; Hunter v. Sullivan, 993 F.2d 31, 35 (4th Cir.1993) [ALJ may properly consider inconsistencies between a plaintiff's testimony and the other evidence of record in evaluating the credibility of the plaintiff's subjective complaints]. Therefore, this Court finds that the ALJ's opinion sufficiently explained how he determined Plaintiff's RFC. See, e.g., Hines v. Barnhart, 453 F.3d 559, 563 (4th Cir.2006) ("In light of SSR 96–8p, [the ALJ's] conclusion [that Plaintiff could perform a range of sedentary work] implicitly contained a finding that Mr. Hines physically is able to work an eight-hour day.) Therefore, the ALJ did not err in his assessment of Plaintiff's RFC and the decision is affirmed.

**Past Relevant Work/Grids**

Plaintiff argues the ALJ improperly relied on the Grids as the documented pain and cognitive difficulties constitute nonexertional impairments sufficient to preclude reliance on the Grids. Plaintiff contends the ALJ did not elaborate as to his conclusions regarding erosion of the occupational base and failed to take all nonexertional impairments into consideration relying almost exclusively on the Grids.

Defendant argues the ALJ reasonably concluded that Plaintiff retained the RFC to perform a range of medium work. Defendant contends the ALJ's conclusion that Plaintiff could perform her past work as a housekeeper is supported by substantial evidence.

"Past relevant work" is defined by the regulations as "work that you have done within the past 15 years, that was substantial gainful activity, and that lasted long enough for you to learn to do it." 20 C.F.R. § 404.1560(b)(1) (emphasis added). A plaintiff is not disabled under the Act if she can return to past relevant work as it is customarily performed in the economy or as the claimant actually performed the work. Social Security Ruling ("SSR") 82–62. The plaintiff bears the burden of establishing her inability to work within the meaning of the Act. 42 U.S.C. § 423(d)(5). She must make a *prima facie* showing of disability by showing she is unable to return to her past relevant work. Once the claimant establishes an inability to return to his past relevant work, the burden is on the Commissioner to come forward with evidence that the plaintiff can perform alternative work and that such work exists in the regional economy. In determining a claimant's ability to perform past relevant work, the Commissioner "may use the services of vocational experts or vocational specialists, or other resources, such as the 'Dictionary of Occupational Titles' and its companion volumes and supplements." 20 C.F.R. §§ 404.1560(b)(2), 416.960(b)(2). Here, the sequential evaluation terminated at Step Four, where Plaintiff had the burden of proving she could not perform past relevant work. It is at Step Five where the Commissioner would have been required to prove that Plaintiff could "make an adjustment to other work." 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v) (emphasis added); Yuckert, 482 U.S. at 146 n. 5, 107 S.Ct. 2287. Thus, the Medical–Vocational Rules, Plaintiff's occupational base, and the impact of any exertional or nonexertional limitations on that base were never an issue in this case. See SSR 83–12 (explaining how disability determination using Medical–Vocational Rules is based upon a claimant's remaining occupational base). Plaintiff's RFC was determined by the ALJ based on the medical records, Plaintiff's testimony, and finding the Plaintiff not credible. The ALJ's decision is supported by

substantial evidence. Plaintiff failed to show that she could not return to her past relevant work. The ALJ found that Plaintiff could return to her previous work as a housekeeper based on the RFC stating:

> Based on the claimant's residual functional capacity as described above, claimant is able to perform her past relevant work as a housekeeper. I find that claimant performed this work within 15 years prior to the time of adjudication of the claim, performed such work at substantial gainful activity level, and performed such work for a time period sufficient to have learned the techniques, acquired information, and developed the facility needed for average performance in the job situation. See also Social Security Ruling 82-62. In comparing the claimant's residual functional capacity with her physical and mental demands of this work, I find that the claimant is able to perform it as actually and typically performed.
>
> . . .
>
> If the claimant had the residual functional capacity to perform the full range of medium work, considering the claimant's age, education, and work experience, a finding of "not disabled" would be directed by Medical-Vocational Rule 203.28. However, the additional limitations have little or no effect on the occupational base of unskilled medium work. A finding of "not disabled" is therefore appropriate under this rule. Claimant's restriction from working at heights or around moving machinery would not significantly erode the unskilled occupational base. This finding is supported by SSR 85-15.

(Tr. 19).

Even though the ALJ found that Plaintiff could return to her past relevant work at Step Four of the evaluation, he also discussed the process in determining whether a successful adjustment to other work can be made. It is at this point that the ALJ determined that, based on Plaintiff's RFC to perform the full range of medium work considering her age, education and work experience, a finding of not disabled would be directed by Grid Rule 203.28. However, the ALJ discussed the fact that if a claimant cannot perform substantially all of the exertional demands of work at a given level of exertion or has nonexertional limitations, the Grids are used as framework. In this case, the ALJ found the restriction from working at heights or around moving machinery did not "significantly

erode the unskilled occupation base having "little or no effect to the occupational base of unskilled medium work." (Tr. 19). The proper inquiry is whether there is substantial evidence to support the finding that the nonexertional condition affects an individual's residual capacity to perform work of which he is exertionally capable. Walker, 889 F.2d at 49; Smith v. Schweiker, 719 F.2d 723, 725 (4th Cir.1984). Not every nonexertional limitation or malady rises to the level of a nonexertional impairment, so as to preclude reliance on the Grids. Walker, 889 F.2d at 48 (4th Cir. 1989); Grant v. Schweiker, 699 F.2d 189 (4th Cir.1983). In this case, the ALJ found that Plaintiff could perform her past relevant work as a housekeeper which is classified as medium work which is within the RFC determined by the ALJ. The ALJ found that the additional restrictions of not working at heights or around moving machinery would not significantly erode the occupational base. Thus, the ALJ did not err in view of the substantial evidence and the objective medical evidence.[3]

## V. CONCLUSION

This Court is charged with reviewing the case only to determine whether the findings of the Commissioner were based on substantial evidence. Richardson, 402 U.S. at 390. Even where the Plaintiff can produce conflicting evidence which might have resulted in a contrary decision, the Commissioner's findings must be affirmed if substantial evidence supported the decision. Blalock, 483 F.2d at 775. The Commissioner is charged with resolving conflicts in the evidence, and this Court cannot reverse that decision merely because the evidence would permit a different conclusion.

---

[3] The court remains mindful that its review is focused on whether the ALJ's opinion is supported by substantial evidence and that its role is not to "undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the Secretary." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996).

Shively v. Heckler, 739 F.2d at 989.  As previously discussed, despite the Plaintiff's claims, she has failed to show that the Commissioner's decision was not based on substantial evidence.  Based upon the foregoing, this Court concludes that the ALJ's findings are supported by substantial evidence.  Therefore, it is ORDERED that the Commissioner's decision be AFFIRMED.

    AND IT IS SO ORDERED.

                          s/Thomas E. Rogers, III
                          Thomas E. Rogers, III
                          United States Magistrate Judge

March 5, 2012
Florence, South Carolina